# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
### MILWAUKEE DIVISION

|  |  |  |
|---|---|---|
| MW MANUFACTURERS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. |
| | ) | |
| ALL AMERICAN WINDOW & DOOR CO., INC., | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff MW Manufacturers, Inc. ("MW"), by its undersigned attorneys, as and for its complaint against Defendant All American Window & Door Co., Inc., ("All American"), alleges as follows:

## NATURE OF THIS ACTION

1. MW brings this action to clarify and confirm its rights under Wisconsin law with respect to its reseller relationship with All American, including All American's sale and service of MW's SoftLite branded Elements window line (the "Elements line").

2. This dispute arises from All American's underperformance as a reseller of the Elements line and its erroneous assertion that it is a "dealer" and that MW is a "grantor" as those terms are defined under the Wisconsin Fair Dealership Law ("WFDL"), Wis. Stat. §§ 135.01 *et seq*.

3. Through this action, MW seeks a judicial determination that:

a. The reseller relationship between MW and All American does not constitute a dealership relationship under the WFDL;

b. All American is not entitled to notice under Wis. Stat. § 135.04, or a showing of "good cause" under Wis. Stat. § 135.03 prior to MW's appointing of additional or replacement resellers of the Elements line in Southeastern Wisconsin;

c. Under the parties' arrangement, MW possesses the right, without recourse or liability, to appoint additional or replacement resellers of the Elements line in Southeastern Wisconsin; or

d. *In the alternative*, if it is determined that the WFDL applies to MW's relationship with All American, that the appointment of additional or replacement resellers of the Elements line in Southeastern Wisconsin is not a "substantial change of competitive circumstances" under the WFDL, or that there exists "good cause" under the WFDL for any such appointment.

**THE PARTIES**

4. Plaintiff MW is a corporation organized under the laws of the State of Delaware, with its principal place of business at 5020 Weston Parkway, Cary, North Carolina 27513. MW is therefore a citizen of Delaware and North Carolina for purposes of diversity jurisdiction under 28 U.S.C. § 1332(c)(1). Among other things, MW manufactures and sells SoftLite branded windows and doors, including the SoftLite Elements line.

5. Defendant All American is a corporation organized under the laws of the State of Wisconsin, with its principal place of business at N112W14880 Mequon Road, Germantown, Wisconsin 53022. All American is therefore a citizen of Wisconsin for purposes of diversity

2

jurisdiction under 28 U.S.C. § 1332(c)(1). All American is a reseller of SoftLite branded windows and doors, including the SoftLite Elements line. All American also offers its customers windows and doors from other manufacturers.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1332(a)(1) and 2201, in that: (i) MW seeks a declaration of its rights under Wisconsin law with respect to its reseller relationship with All American; (ii) MW and All American are citizens of different States and, thus, there is complete diversity of citizenship between the parties; and (iii) the amount in controversy exceeds $75,000, exclusive of interest and costs.

7. This Court has personal jurisdiction over All American pursuant to Wis. Stat. § 801.05(1)(c), because All American is a domestic corporation.

8. Venue properly lies in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims stated herein occurred in this district.

## FACTUAL ALLEGATIONS

### *The Parties' Relationship*

9. All American has been an authorized reseller of SoftLite branded windows and doors since 2007.

10. For many years, MW and All American have operated under an informal "hand shake" arrangement pursuant to which All American served as the sole reseller of the SoftLite Elements line in five counties in the Milwaukee metropolitan area—Washington, Waukesha, Ozaukee, Milwaukee, and Racine. This arrangement applied only to the Elements line; other SoftLite products are sold by other resellers throughout Southeastern Wisconsin.

3

11. Although the parties did not execute a formal written agreement memorializing this arrangement, MW's understanding was reflected in a September 21, 2017 letter from Tyson Schwartz, then-President of SoftLite Windows, to All American, attached hereto as Exhibit A.

12. As Mr. Schwartz's letter explains, All American's "exclusivity" on the Elements line was expressly conditioned upon All American maintaining an agreed upon minimum sales volume—"adjusted and agreed to on an annual basis"—and the relationship could be amended or terminated by either party at any time for any reason without penalty. (*Id.*)

13. From 2008 through 2022, All American's sales of SoftLite products exceeded the minimum annual sales volume required to maintain exclusivity.

14. In 2024, SoftLite was acquired from Harvey Building Products Corp. by Cornerstone Building Brands, Inc. ("Cornerstone"), MW's parent company.

15. Following Cornerstone's acquisition of SoftLite, All American continued to sell SoftLite products for MW under the preexisting arrangement.

### *The Parties' Dispute*

16. In recent years, All American's sales of SoftLite branded products declined substantially.

17. In 2023, All American's sales volume for SoftLite products fell significantly below its average annual sales for the preceding decade.

18. In 2024,[1] All American's sales of SoftLite products declined by more than half from the prior year, resulting in sales that were not only substantially below its historical average, but also below the minimum volume required to maintain exclusivity. Indeed, at the end of June 2024, All American's year-to-date sales were over 80 percent off its 2023 sales.

---

[1] Also in 2024, All American began advertising ProVia, a competing supplier of windows, as its leading product, in violation of SoftLite's Elements exclusivity program guidelines.

4

19. On July 2, 2024, Mark Hobbs, Vice President of Business Development for Cornerstone, sent a letter to All American notifying it that effective September 1, 2024, All American would no longer be permitted to carry the Elements line for failure to meet the program requirements. MW would allow All American to fulfill orders to customers that had already purchased Elements windows, but for new customers, MW offered All American the opportunity to sell an alternative SoftLite window line. A true and correct copy of Mr. Hobbs's letter is attached hereto as Exhibit B.

20. On July 8, 2024, All American's President, Terri Lodwick, responded to Mr. Hobbs's letter, asserting that All American never agreed to meet minimum sales quotas or to comply with any other SoftLite policies as a condition for maintaining Elements exclusivity. A true and correct copy of Ms. Lodwick's letter is attached hereto as Exhibit C.

21. Ms. Lodwick also claimed that there was no express agreement that allowed MW to terminate All American's exclusive territorial right to sell the Elements line and asserted that the WFDL imposed further protections from termination. Ms. Lodwick threatened litigation if MW did not rescind its letter within seven days. (*Id.*)

22. In light of Ms. Lodwick's threat of legal action, MW decided that it would not move forward with the action outlined in Mr. Hobbs's July 2, 2024 letter.

23. Despite this, All American's sales improved only marginally in 2025, and remained below the minimum volume requirement for exclusivity.

24. On February 6, 2026, Mr. Hobbs sent another letter, this time notifying All American that its exclusivity on the Elements line would be removed for once again failing to maintain its sales above the required annual minimum sales volume. A true and correct copy of Mr. Hobbs's letter is attached hereto as Exhibit D.

25. On February 10, 2026, Ms. Lodwick sent a letter to Mr. Hobbs in response to his February 6 letter, captioned "Pre-suit Notice." In it, Ms. Lodwick contended that SoftLite's intended removal of Elements exclusivity would violate the WFDL and All American's "grandfather Agreement." She argued that the parties' discussion in 2024 was insufficient notice under the WFDL. Ms. Lodwick asserted that competition from ProVia had affected SoftLite's market position, that SoftLite's "subjective sales expectations" were "unreasonable and discriminatory," and that removal of exclusivity would constitute a substantial change in competitive circumstances under the WFDL. Ms. Lodwick once again threatened litigation if SoftLite did not rescind its letter within ten days. A true and correct copy of Ms. Lodwick's letter is attached hereto as Exhibit E.

26. On February 23, 2026, Cristina Choi, Assistant General Counsel for Cornerstone, contacted Ms. Lodwick, requesting that All American provide MW with a current copy of its agreement with SoftLite and proposed a meeting to discuss its terms.

27. On February 27, 2026, Ms. Lodwick responded, asserting that All American's exclusivity on the Elements line is protected under the WFDL. Ms. Lodwick informed MW that All American does not consent to removal of its exclusivity, refused to provide MW with the agreement that she claims governed the parties' relationship, and threatened litigation if MW opted to proceed with termination of exclusivity.

28. On March 2, 2026, Ms. Choi informed Ms. Lodwick that MW could not assess All American's position without reviewing the agreement purportedly governing the parties' relationship, and renewed the request for a copy. Ms. Choi further stated MW's position that the current arrangement between MW and All American does not constitute a protected dealership under Wisconsin law and explained that MW has not waived its right to terminate the exclusivity

6

component of the parties' arrangement. Ms. Choi reiterated MW's desire to resolve the dispute amicably and again proposed that the parties meet to discuss the matter.

29. On March 3, 2026, Ms. Lodwick responded, asserting that MW's proposed introduction of another reseller for the Elements line in the Milwaukee area would constitute a "substantial change" requiring statutory good cause under the WFDL. Ms. Lodwick again refused to provide MW with a copy of any written agreement. A true and correct copy of Ms. Choi and Ms. Lodwick's February 23, 2026 through March 3, 2026 email exchange is attached hereto as Exhibit F.

30. In the following weeks, the parties' dispute continued to escalate.

31. On March 26, 2026, Kevin Kuligowski, MW's sales representative for All American, arrived at All American's premises at approximately 6:23 a.m. in connection with a delivery audit. Mr. Kuligowski arrived before All American's business hours and remained in his vehicle until an All American employee arrived. After Mr. Kuligowski identified himself and explained that he was there to conduct a delivery audit, he was informed that Ms. Lodwick did not want him to enter the warehouse or the showroom.

32. When the delivery driver arrived at approximately 7:05 a.m., All American employees physically prevented Mr. Kuligowski from entering the warehouse, although they permitted him to inspect the contents of the delivery truck. Mr. Kuligowski took photographs of the truck's contents and also photographed the dumpster area outside the facility.

33. During the visit, Mr. Kuligowski observed facts giving rise to serious concern that All American has materially shifted its business away from SoftLite products and toward ProVia products, a direct competitor of SoftLite. Among other things, Mr. Kuligowski observed what appeared to be a substantial quantity of ProVia product in All American's warehouse and ProVia

7

packaging in the dumpster.

34.     On information and belief, All American's hostility toward Mr. Kuligowski and the efforts to restrict MW's access to its premises were motivated, at least in part, by a desire to prevent MW from discovering the extent to which All American has de-emphasized SoftLite products in favor of competing lines, including ProVia. This conduct is consistent with All American's sharp decline in SoftLite sales, its refusal to provide the agreement on which it claims to rely, and its broader efforts to obstruct MW's ability to assess All American's current performance and business practices.

35.     All American's response to the March 26, 2026 audit further escalated the parties' dispute.

36.     On March 27, 2026, Ms. Lodwick wrote to MW regarding Mr. Kuligowski's visit, characterizing it as unauthorized "criminal trespass" and "corporate espionage," and demanding that any photographs taken by Mr. Kuligowski be deleted.

37.     On March 30, 2026, MW responded, informing Ms. Lodwick that the visit had been a routine delivery audit, denying All American's accusations, and requesting preservation of relevant evidence, including surveillance footage.

38.     On March 31, 2026, Ms. Lodwick sent another letter doubling down on the accusations that Mr. Kuligowski had trespassed on All American's property, threatening claims for injunctive relief and under Wisconsin's Uniform Trade Secrets Act, refusing to provide the surveillance footage, and declaring that MW personnel would no longer be permitted on All American's property except in connection with deliveries of MW products.

39.     On information and belief, All American's extreme reaction to a routine business visit reflects both its hostility toward MW's sales personnel and its effort to conceal the extent of

8

its relationship with SoftLite's competitors.

40.     Since then, MW has continued to act in good faith toward All American by permitting All American to fulfill orders, subject to MW's standard Terms and Conditions, notwithstanding the parties' dispute.

41.     MW has also refrained from appointing any additional or replacement resellers for the Elements line in Southeastern Wisconsin.

### COUNT I – DECLARATORY JUDGMENT

42.     MW incorporates and realleges the preceding paragraphs as set forth fully herein.

43.     Although MW and All American have maintained a reseller relationship with respect to SoftLite products, including the Elements line, that relationship does not constitute a protected dealership under the WFDL.

44.     A WFDL dealership requires: (1) an agreement; (2) which grants the right to sell or distribute goods or services, or the right to use a trade name, logo, advertising or other commercial symbol; and (3) a community of interest in the business of offering, selling or distributing goods or services. Wis. Stat. § 135.02(3).

45.     The elements of a WFDL dealership are not met here.

46.     Because the arrangement between MW and All American does not constitute a protected "dealership" as that term is defined in Wis. Stat. § 135.02(3), MW is not subject to the WFDL's statutory requirements prior to exercising its right to appoint additional or replacement resellers of the Elements line in Southeastern Wisconsin.

47.     All American nevertheless contends that the parties' relationship is a dealership relationship governed by the WFDL, that it is entitled to statutory notice under Wis. Stat. § 135.04,

9

and that MW may not appoint additional or replacement resellers absent a showing of "good cause" within the meaning of Wis. Stat. § 135.03.

48.     There therefore exists a real and justiciable controversy concerning whether the parties' relationship is covered by the WFDL.

49.     Accordingly, MW requests a judicial declaration that: (a) the reseller relationship between MW and All American does not constitute a dealership relationship under the WFDL; (b) All American is not entitled to notice under Wis. Stat. § 135.04 or a showing of "good cause" under Wis. Stat. § 135.03 prior to MW's appointing additional or replacement resellers of the Elements line in Southeastern Wisconsin; (c) under the parties' arrangement, MW possesses the right, without recourse or liability, to appoint additional or replacement resellers of the Elements line in Southeastern Wisconsin; or, *in the alternative*, (d) if it is determined that the WFDL applies to MW's relationship with All American, that the appointment of additional or replacement resellers of the Elements line in Southeastern Wisconsin is not a "substantial change of competitive circumstances" under the WFDL, or that there exists "good cause" under the WFDL for any such appointment.

### PRAYER FOR RELIEF

**WHEREFORE**, MW requests that this Court enter judgment in its favor as follows:

1.     Declaring that the reseller relationship between MW and All American does not constitute a dealership relationship under the WFDL;

2.     Declaring that All American is not entitled to notice under Wis. Stat. § 135.04, or a showing of "good cause" under Wis. Stat. § 135.03 prior to MW's appointing additional or replacement resellers of the Elements line in Southeastern Wisconsin;

3. Declaring that under the parties' arrangement, MW possesses the right, without recourse or liability, to appoint additional or replacement resellers of the Elements line in Southeastern Wisconsin;

4. *In the alternative*, if it is determined that the WFDL applies to MW's relationship with All American, declaring that the appointment of additional or replacement resellers of the Elements line in Southeastern Wisconsin is not a "substantial change of competitive circumstances" under the WFDL, or declaring that there exists "good cause" under the WFDL for any such appointment.

5. Awarding MW its costs, disbursements, and other expenses to the fullest extent permitted by law; and

6. Awarding MW such other and further relief as the Court deems just and proper.

Dated: June 5, 2026                                Respectfully submitted,

                                                   /s/ Trent M. Johnson
                                                   Trent M. Johnson (WI Bar No. 1056289)
                                                   Nathan D. Imfeld (WI Bar No. 1092932)
                                                   Katherine Q. Van Scoy (WI Bar No. 1135963)
                                                   Foley & Lardner LLP
                                                   777 East Wisconsin Avenue
                                                   Milwaukee, WI 53202-5306
                                                   414.271.2400
                                                   414.297.4900
                                                   tjohnson@foley.com
                                                   nimfeld@foley.com
                                                   katie.vanscoy@foley.com

                                                   *Counsel for Plaintiff MW Manufacturers, Inc.*

11